**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CHRISTOPHER S.,[1]
     Plaintiff,

          v.                             Civil No. 3:20-cv-00709 (REP)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
     Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff's application for supplemental security income under the

Social Security Act ("Act"). At the time of his application date, Plaintiff was a twenty-seven-year-

old former stonemason helper and furniture mover. (R. at 12.) He alleges he is unable to work due

to intellectual disabilities, bipolar disorder, posttraumatic stress disorder ("PTSD"), attention-

deficit hyperactivity disorder ("ADHD"), depression, and anxiety. (R. at 12.)

On December 26, 2019, an Administrative Law Judge ("ALJ") issued a decision finding

Plaintiff not disabled since September 20, 2018. (R. at 22.) This matter comes before the Court for

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff seeks review of the ALJ's decision and alleges that the ALJ erred in her decision when she:

(1) concluded that Plaintiff's mental impairments did not meet or equal Listing 12.05;

(2) provided "legally insufficient reasons" for finding that Plaintiff has moderate limitations in the areas of:

    a.  concentration, persistence, and pace;

    b.  understanding, remembering, or applying information;

(3) assessed Plaintiff's mental residual functional capacity by:

    a.  insufficiently defining "production rate pace;"

    b.  failing to reconcile the differences between two psychological consultants' opinions;

    c.  finding that Plaintiff can perform jobs that are inconsistent with his assessed general education development reasoning level;

    d.  finding that Plaintiff can perform jobs that are in conflict with his alleged mathematics capabilities.

(Pl.'s Mem. of Point and Auth. Supp. Mot. Summ. J. 7, ECF No. 21 ("Pl.'s Mem.").)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 24) and Plaintiff's Motion to Remand (ECF No. 25) be GRANTED,

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

that Defendant's Motion for Summary Judgment (ECF No. 30) be DENIED and the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on October 26, 2018, alleging disability beginning January 11, 2006. (R. at 158.) The Social Security Administration ("SSA") denied Plaintiff's claim on December 7, 2018 and again upon reconsideration on April 5, 2019. (R. at 121, 129.) Plaintiff requested a hearing before an ALJ, and a hearing was held on November 19, 2019. (R. at 67-95, 136-37.) On December 26, 2019, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 10-22.) Plaintiff requested review of the ALJ's decision (R. at 155-57), and on August 17, 2020, the SSA Appeals Council denied it and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an

opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that her limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 7-25.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2018, the application date. (R. at 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) bipolar disorder; (2) PTSD; (3) intellectual disability; (4) ADHD; (5) depression; and (6) anxiety. (R. at 12.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 16.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [T]he ability to understand, remember, apply, and carry out simple repetitive tasks consistent with unskilled, repetitive work. He can concentrate, persist, and maintain pace to complete unskilled repetitive tasks that do not require production rate pace, meaning fast pace work. He can perform routine interactions with coworkers, supervisors, and the public in settings where tasks involve work primarily with objects rather than people. He can adapt to occasional workplace changes.

(R. at 16.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence," in accordance with the regulations. (R. at 16.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff's limitations prevented him from performing any of his past relevant work. (R. at 21.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 21-22.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of a laundry laborer, industrial cleaner, and floor waxer. (R. at 22.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 22.)

## IV. ANALYSIS

### A.   Substantial Evidence Supports the ALJ's Finding that Listing 12.05 Was Not Satisfied.

Plaintiff argues the ALJ erred in concluding his impairments failed to meet or equal the criteria in paragraph B of Listing 12.05. (Pl.'s Mem. at 5). Plaintiff maintains that this was error because the evidence shows that he has "a Listing Level IQ of 64, is in the lowest 5th percentile in

memory and processing speed; cannot change a $5.00 bill; reads at a fourth grade level; and was fired by his father[.]" (Pl.'s Mem. at 1). Defendant argues that the ALJ properly considered Listing 12.05 and concluded Plaintiff's mental impairments do not cause at least two marked limitations or one extreme limitation in a broad area of functioning. (Def.'s Mem. at 11-12).

At step three of the evaluation process, an ALJ must evaluate the evidence to determine whether a claimant has an impairment or combination of impairments that meets or equals a listed impairment and is presumptively disabled. 20 C.F.R. § 416.920(a)(4)(iii). An ALJ must identify relevant listings and compare their medical criteria with the symptoms, signs, and laboratory findings of the claimant's impairments, as reflected in the medical evidence. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). To meet a listing, a claimant's impairments "must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). To equal a listing, a claimant's impairment must be at least equal in severity and duration to the criteria specified in the listing. 20 C.F.R. § 416.926(a).

A finding that a claimant is disabled is directed under Listing 12.05(B) if the following criteria are met:

> (1) Significantly subaverage general intellectual functioning evidenced by (a) or (b):
>
>> (a) A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> (b) A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> (2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> (a) Understand, remember, or apply information; or
>>
>> (b) Interact with others; or

(c) Concentrate, persist, or maintain pace; or

(d) Adapt or manage oneself; and

(3) The evidence about [the claimant's] current intellectual and adaptive functioning and about the history of [his] disorder demonstrates or supports the conclusion that the disorder began prior to [his] attainment of age 22.

20 C.F.R. Pt 404, Subpt. P, App'x 1 § 12.05(B).

Plaintiff's impairment meets the first criterion in paragraph B of Listing 12.05 of a full-scale IQ of 70 or below. Plaintiff was administered the Wechsler Adult Intelligence Scale and scored a full-scale IQ of 64. (R. at 15, 242); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05(B)(1). Plaintiff's impairment also presumably meets the third criterion, as he was under the age of twenty-two at the time of his alleged onset of disability. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05(B)(3).

However, after considering all the requirements in paragraph B of Listing 12.05, the ALJ concluded that Plaintiff's mental impairments failed to meet Section 12.05(B)(2). (R. at 15.) Pertinent to Plaintiff's arguments, an individual's ability to understand, remember, or apply information "refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(1).[4] *See id*. The ALJ assessed Plaintiff with a moderate limitation in this area. (R. at 13.) She reasoned that although Plaintiff reported problems with memory, understanding, and following instructions, including needing reminders to take

---

[4]Although documentation of all examples are not required, the following illustrate the nature of the area of mental functioning: understanding and learning terms, instructions, and procedures; following one-or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(1).

medications and of his own personal needs, nonetheless, he was capable of independent personal care. (R. at 13.) The ALJ explained that Plaintiff "was able to give a good history of his medical and mental health history" to his treating providers and examiners, and reported being able to cook, read, utilize social media, do yard work, and wash cars.  (R. at 13.) She also determined that Plaintiff performs "normal necessary household activities, such as housecleaning, planting flowers, mowing the lawn, and raking leaves." (R. at 13.) The ALJ found that not only did these activities require memory, understanding, or applying information, but Plaintiff generally did not complain of symptoms relating to this area of functioning. (R. at 13.) The Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff has a moderate limitation in this area of functioning.

A claimant's ability to interact with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(2).[5]  In this area of mental functioning, the ALJ found that Plaintiff has a moderate limitation. She explained that Plaintiff's medical records did not contain notations of serious deficiencies in his speech or conversation, and he had good eye contact. (R. at 13.) Although Plaintiff did not spend much time with others or go out often, he utilizes a social media account and goes grocery shopping with his friend every two weeks. (R. at 13.) Moreover, Plaintiff did not report difficulties with interpersonal interaction to his treating providers, but generally reported good relationships. (R. at 13.)

---

[5] Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Documentation of all examples is not required. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(2).

A claimant's ability to concentrate, persist, or maintain pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3).[6] With respect to Plaintiff's ability in this area of functioning, the ALJ concluded that Plaintiff has a moderate limitation. (R. at 13.) She reasoned, again, that Plaintiff's daily activities and tasks demonstrated his ability to concentrate, persist, or maintain pace. (R. at 13.) She also noted that Plaintiff's mental status and psychiatric examination results showed no serious problems, nor did his treating practitioners note that he was "overly distractible or slow." (R. at 13.) The Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff has a moderate limitation in this area of functioning.

Finally, the ALJ found that Plaintiff has a moderate limitation in adapting or managing himself. (R. at 13.) This area of mental functioning "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(4).[7] The ALJ noted that Plaintiff did not complain of difficulties in taking care of his hygiene or personal care, nor did the record show that he had serious problems of being aware of

---

[6] Examples of the nature of this area of mental functioning include initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. Documentation of all examples is not required. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3).

[7] Examples of adapting or managing oneself include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(4).

normal hazards and taking appropriate precautions. (R. at 13.) The ALJ also found that Plaintiff

had "no problems with independently making plans and setting goals." (R. at 14.)

Plaintiff argues that his school records suggested marked difficulties understanding,

remembering, and applying information, as they reflect consistently low full-scale IQ scores and

his failure to retain all knowledge and requiring more time to complete tasks. (Pl.'s Mem. at 2-3.)

He contends that the evidence supports marked limitations in understanding, remembering, and

applying information. (Pl.'s Mem at 2-3). These marked difficulties, according to Plaintiff, render

him disabled under paragraph B of Listing 12.05. (Pl.'s Mem. at 2-3).

However, "[a]n impairment that manifests only some of those criteria, no matter how

severely, does not qualify." *Id. See also Hancock v. Astrue*, 667 F.3d 470, 475 (4th Cir. 2012)

(establishing that even if claimant's IQ scores fall within the required range, Listing 12.05 is not

satisfied if substantial evidence indicates that claimant can perform tasks beyond the capacity of

an intellectually disabled person). Although Plaintiff satisfied the IQ requirement, he failed to offer

sufficient evidence of a deficit in adaptive functioning.

The substantial evidence that Plaintiff does not lack deficits in adaptive functioning is as

follows: Plaintiff reads, watches television, socializes with friends, washes and dresses himself,

prepares food, walks and cares for his dog, shops in stores, does yardwork, navigates social media,

and otherwise acts appropriately and independently on a sustained basis. (R. at 13.) The ALJ notes

that Plaintiff maintained good relationships with his friends, and he testified that he gets along well

with his roommate. (R. at 13.) Plaintiff does what he can do to support his roommate's household

needs, including using both a push mower and a riding mower and cleaning the house. (R. at 81,

89-90.) Plaintiff worked as a stonemason's helper but quit because he "didn't like it" and his father

did not want to continue paying him for the work. (R. at 74.)  Plaintiff then worked as a furniture

11

mover for four years, and succeeded well enough to support his then-girlfriend and family. (R. at 83-85.) Plaintiff's employment ended when he became incarcerated. (R. at 73-74, 83.) After he completed his two-year sentence, Plaintiff anticipated difficulties securing employment with a felony conviction. (R. at 79-80.) Nonetheless, Plaintiff managed to secure employment as a landscaper, even after filing for disability benefits. (R. at 357, 369, 381.)

This evidence substantially supports the ALJ's finding that Listing 12.05 was not satisfied. *See Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (quoting *Atkins v. Virginia*, 536 U.S. 304, 308 n.3 (2002)) (establishing that adaptive skill areas include: "communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work"). Therefore, the ALJ did not err when she concluded that Plaintiff has no more than a moderate limitation in the functional areas set forth under Listing 12.05.

### B.     The ALJ Erred By Failing to Adequately Define 'Production Rate Pace' in Her Residual Functional Capacity Assessment.

Plaintiff next argues that the ALJ failed to account for his moderate limitation in concentration, persistence, and pace in the ALJ's residual functional capacity determination when she restricted Plaintiff to "unskilled, repetitive tasks that do not require production rate pace, meaning fast pace work." (Pl.'s Mem. at 13 (citing R. at 16)). Plaintiff explains that the ALJ's failure to define "fast pace work" fails to comply with the requirements set forth by *Mascio* and its progeny; therefore, it prevents this Court from conducting a meaningful review. (Pl.'s Mem. at 13-14). Defendant responds that the ALJ "sufficiently defined 'production rate pace' by stating she meant 'fast pace work,' and provided additional context to support her determination of this limitation. (Def.'s Mem. at 15-17).

In conducting substantial evidence review, courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations."

12

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (internal citation omitted). Thus, agency conclusions must be stated in terms the Court can understand for the Court to conduct substantial evidence review. In *Thomas v. Berryhill*, the Fourth Circuit held that the ALJ's residual functional capacity assessment limiting the plaintiff to work that did not "require[e] a production rate or demand pace" frustrated judicial review because the ALJ did not provide the Court with "enough information to understand what those terms mean[t]." 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). It reasoned that, with "production rate" and "demand pace" undefined, it was "difficult, if not impossible, for [the Court] to assess whether their inclusion in Thomas's RFC [wa]s supported by substantial evidence." *Id*. Expressing no opinion as to whether the residual functional capacity findings were correct, the Court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 312 n.5 ("Without further explanation, we simply cannot tell whether the RFC finding – particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace' – properly accounts for [the plaintiff's] moderate limitations in concentration, persistence, or pace. On remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus . . . and stay on task at a sustained rate.").

While the *Thomas* Court provided three additional bases for remand, the Fourth Circuit subsequently has remanded solely for an ALJ's failure to define ambiguous terms in the residual functional capacity determination. *See e.g.*, *Perry v. Berryhill*, 765 F. App'x 869, 873 (4th Cir. 2019). In *Perry*, the Court found that the failure to define the term "non-production oriented work setting" precluded meaningful review. *Perry v. Berryhill*, 765 App'x 869, 873 (4th Cir. 2019). However, *Perry* recognized that when the ALJ provides "additional context" for terms that are not specifically defined in the residual functional capacity, it can "help[] to explain the restrictions intended by the ALJ, and to allow[] us to evaluate whether that restriction adequately account[s]

13

for the claimant's limitations." *Id.* at 872. This was consistent with the Fourth Circuit's 2017 ruling in *Sizemore v. Berryhill*, in which the Court approved the term "non-production" because it was surrounded by additional context defining it. 878 F.3d 72, 79-81 (4th Cir. 2017).

Here, the ALJ found that Plaintiff can "concentrate, persist, and maintain pace to complete unskilled repetitive tasks that do not require production rate pace, meaning fast pace work." (R. at 16.) "Unskilled work" is a term of art that is defined in the regulations. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a). But no analogous regulatory definition exists for the "production rate pace" specified by the ALJ, or for any other similar term. Nor, as the Fourth Circuit has recognized, are such descriptions commonly used in its case law or otherwise self-explanatory. *See Perry*, 765 F. App'x at 872; *Thomas v. Berryhill*, 916 F.3d 307, 2019 U.S. App. LEXIS 1312, 2019 WL 193948, at *3 (4th Cir. 2019) (finding that the ALJ erred by failing to explain meaning of restriction to jobs that do not require "a production rate or demand schedule"). The ALJ offered an explanation of her own for what she meant when she used the phrase "production rate pace," by clarifying it to mean "fast pace work." (R. at 16.) However, the ALJ failed to define what she meant by "fast pace work," which stymies this Court's ability to assess whether a person with Plaintiff's limitations could maintain the pace proposed. *See Thomas*, 916 F.3d at 312; *see also Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ( the ALJ's failure to define "fast paced production" made it impossible to "assess whether a person with [the claimant's] limitations could maintain the pace proposed") "Fast pace work" is not defined in the regulations, nor did the ALJ define its meaning in her residual functional capacity determination.

This missing explanation is particularly important because the ALJ does not dispute that Plaintiff has limitations in concentration, persistence, and pace. (R. at 16.) However, those limitations are not accounted for adequately by the portion of the ALJ's assessment that restricts

14

him to "unskilled, repetitive work." *See Perry*, 765 F. App'x at 872 (citing *Mascio*, 780 F.3d at 638 ("[A]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting [the claimant] to simple, routine tasks or unskilled work." (internal quotation marks omitted))). Indeed, the ALJ addressed these limitations by referencing "production rate pace, meaning fast pace work." (R. at 16.) But, again, the Court does not know what the ALJ intended when she used that phrase. As a result, it is difficult, if not impossible, to evaluate whether restricting Plaintiff to a "production rate pace" or "fast pace work" properly accounted for Plaintiff's limitations in concentration, persistence, and pace.

The ALJ will need to establish for how long, and under what conditions, Plaintiff is able to "focus [his] attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). This additional analysis would then allow the Court to meaningfully review the ALJ's residual functional capacity finding. However, because the ALJ's failure to explain the meaning of "production rate pace" or "fast pace work" requires this Court to "guess about how [she] arrived at [her] conclusions," and leaves the Court "uncertain as to what [she] intended," the Court concludes that the ALJ's assessment is "lacking in the analysis needed . . . to review meaningfully [her] decisions." *Mascio*, 780 F.3d at 636-37. Accordingly, this Court vacates and remands the decision, and in doing so, expresses no opinion as to whether the ALJ's residual functional capacity assessment was correct; it simply asks the ALJ to provide a "clearer window into her reasoning." *Thomas*, 916 F. 3d at 313.

Because remand is warranted on this ground, the Court does not reach Plaintiff's remaining challenges to the ALJ's decision. *See Testamark v. Berryhill*, 736 F. App'x 395, 399 n.2 (4th Cir. 2018) (per curiam).

**V. CONCLUSION**

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 24) and Plaintiff's Motion to Remand (ECF No. 25) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 30) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

       **Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                      /s/

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: February 3, 2022

17